69950001-GUO

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GENE MICHNO, ) | |
| ) | |
| Plaintiff, ) | Honorable Matthew F. Kennelly |
| ) | |
| v. ) | Case No. 13-cv-7163 |
| ) | |
| ) | Consolidated |
| SHERIFF THOMAS DART, COOK COUNTY ) | |
| SHERIFF'S OFFICE, ROSEMARIE NOLAN, ) | |
| ZELDA WHITTLER, JOSEPH WAYS, SR., ) | |
| GARY HICKERSON, AND COOK COUNTY, ) | |
| ) | |
| Defendants. ) | |

| | |
|---|---|
| IVAN HERNANDEZ, | |
| ) | |
| Plaintiff, ) | Honorable Matthew F. Kennelly |
| ) | |
| v. ) | Case No. 13-cv-07949 |
| ) | |
| COOK COUNTY SHERIFF'S OFFICE, ) | Consolidated |
| THOMAS J. DART, in his individual capacity ) | |
| as Sheriff of Cook County, Illinois ) | |
| ROSEMARIE NOLAN, ZELDA WHITTLER, ) | |
| JOSEPH WAYS, SR., EDWARD M. DYNER, ) | |
| in their individual capacities, and COOK ) | |
| COUNTY, a local unit of government, ) | |
| ) | |
| Defendants. ) | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT

NOW COME Defendants, COOK COUNTY SHERIFF'S OFFICE, AND THOMAS J. DART, ROSEMARIE NOLAN, ZELDA WHITTLER, JOSEPH WAYS SR., GARY HICKERSON, EDWARD DYNER, AND COOK COUNTY (the "Defendants") by their

attorneys, Querrey & Harrow, Ltd., and for their Response in Opposition to Plaintiffs' Motion for Partial Summary Judgment, state as follows:

## INTRODUCTION

In their Motion for Summary Judgment, Plaintiffs argue that Defendants should be collaterally estopped from litigating the issue of whether they had knowledge of Plaintiffs' political affiliations or perceived political affiliations. Plaintiffs, however, are unable to satisfy all four elements necessary to establish that Defendants should be collaterally estopped from litigating this issue at trial. The sole Defendant at the time of trial in *Hernandez I* was the Cook County Sheriff's Office. None of the individual Defendants against whom collateral estoppel is being asserted were involved in the prior litigation and, therefore, were not fully represented in that case. Next, the Cook County Sheriff's Office should also not be collaterally estopped from litigating this issue because it did not have a meaningful opportunity to appeal the resolution of this issue in *Hernandez I*. Accordingly, this Court should deny Plaintiffs' Motion for Partial Summary Judgment.

## STATEMENT OF FACTS

### A. *Hernandez I*

Plaintiffs Ivan Hernandez and Gene Michno, along with four other individuals, filed a lawsuit, *Hernandez, et al. v. Cook County Sheriff's Office* (07 CV 855) (hereinafter "*Hernandez I*"), on February 13, 2007, in which they alleged that the Cook County Sheriff's Office violated their First Amendment rights by discriminating and retaliating against them due to their support for a particular candidate for Cook County Sheriff. (DSOAF ¶ 1). In short, Plaintiffs alleged that following the February 11, 2006 Jail escape during which six violent inmates escaped from the

2

ABO, they were only investigated and disciplined because they supported Richard Remus for Sheriff in the March 2006 Democratic Primary. (DSOAF ¶ 1). In *Hernandez I*, Plaintiffs had originally sued the Cook County Sheriff's Office, Sheriff Michael Sheahan, Dennis Andrews, Timothy Kaufmann, Scott Kurtovich and Thomas Snooks. (DSOAF ¶ 2). All of the individual Defendants, including Sheriff Sheahan, were sued in their individual capacities. (DSOAF ¶ 2). By the time that the case reached trial in August of 2016, the sole remaining Defendant was the Cook County Sheriff's Office. (DSOAF ¶ 2).

Following a three week bench trial, Judge Durkin entered judgment in favor of Defendant. In reaching his decision, Judge Durkin found that Plaintiffs had met their initial burden of proof. (DSOAF ¶ 3). When reaching his decision, Judge Durkin stated that "the Court finds the Sheriff's Office believed Plaintiffs, like virtually all SORT officers, were politically affiliated with Remus" based on the testimony of Sheriff's Office officials Scott Kurtovich and Dennis Andrews. (DSOAF ¶ 4).

Once the *Hernandez I* court found that Plaintiffs had met their initial burden of proof, the court found that Defendant Cook County Sheriff's Office met its burden of showing that another "sufficient condition" existed for the employment actions taken against Plaintiffs. (DSOAF ¶ 5). In short, the court found that . . . Gater's confession, coupled with the fact that Plaintiffs were responsible for guarding the section of the Jail from which the escape originated—was a sufficient condition for the investigations and suspensions." (DSOAF ¶ 6). The court further reasoned that the employment actions taken against Plaintiffs were "eminently reasonable" because Bailey and Davis were assigned to guard the ABO during the escape, Hernandez had failed to properly ensure that Bailey and Davis were at their posts for the shift during which the

3

escape occurred, and Darin Gater's confession indirectly implicated Bailey and Davis and directly implicated Michno, Jones, and Rodriguez. (DSOAF ¶ 7).

### B.  Current Cases

An OPR investigation was opened and termination proceedings were brought against Plaintiff Gene Michno after he failed to report to the Cook County Medical Unit for six months after his Medical Leave of Absence expired despite having received notice to do so. (DSOAF ¶ 8). In his current lawsuit, Plaintiff Michno claims that an OPR investigation was conducted and termination proceedings were initiated because of his political affiliation and his participation in *Hernandez I*. (DSOAF ¶ 9). His lawsuit was brought against the Cook County Sheriff's Office, Sheriff Dart, Rosemarie Nolan, Zelda Whittler, Joseph Ways, Sr., Gary Hickerson, and Cook County. (DSOAF ¶ 10). All individual Defendants, including Sheriff Dart, are being sued in their individual capacities. (DSOAF ¶ 10).

The OPR investigation regarding Plaintiff Michno was assigned to Shilling, who was not aware of any lawsuits filed by correctional officers relating to the 2006 Jail Escape, and he neither researched nor heard about the political affiliation of any employee, including Plaintiff Michno. (DSOAF ¶¶ 11-12). Fitzgerald, who took over the OPR investigation and who sustained the allegations against Plaintiff Michno, testified that he never inquired or conducted research into Michno's political affiliation and he did not know that Michno was involved in any litigation against the Sheriff's Office. (DSOAF ¶¶ 13-15). Defendant Ways, who reviewed Fitzgerald's findings and made the discipline recommendation prior to the Command Channel Review, testified that there was no indication that any consideration was given to politics during the OPR investigation and he never communicated with the Sheriff regarding Michno's OPR

4

investigation. (DSOAF ¶¶ 16-18). Defendant Hickerson testified that he did not know who Michno was and that he did not have communications with anyone regarding Michno prior to reviewing and signing off on Michno's OPR investigation as part of the Command Channel Review. (DSOAF ¶¶ 19-20). Defendant Whittler, who reviewed the OPR investigations as part of the Command Channel Review, was not involved in the investigations and she did not recall having any conversations with anyone regarding Michno. (DSOAF ¶¶ 21-22). Defendant Whittler learned of *Hernandez* I after she received the OPR investigation and she did not believe that the recommendation of discipline was based on anything other than the sufficient evidence contained within the investigations. (DSOAF ¶¶ 23-24). Finally, Sheriff Dart was not involved in Michno's OPR investigation. (DSOAF ¶ 37).

With respect to Plaintiff Hernandez, he was ordered to appear for an OPR witness interview relating to the theft allegations against Correctional Officer Burruss, but Plaintiff Hernandez refused to answer questions unless his attorney was present. (DSOAF ¶¶ 25-26). Plaintiff Hernandez was thus added to the Complaint Register in the *Burruss* matter for an investigation into his failure to cooperate with the OPR investigation. (DSOAF ¶ 27). Similar to Plaintiff Michno, Plaintiff Hernandez claims the employment actions were taken against him because of his political affiliation and his participation in *Hernandez I*. (DSOAF ¶¶ 28). His lawsuit was brought against the Cook County Sheriff's Office, Sheriff Dart, Rosemarie Nolan, Zelda Whittler, Joseph Ways, Sr., Edward Dyner, and Cook County. (DSOAF ¶ 29). Sheriff Dart is being sued in his individual and official capacities, and the remaining individual Defendants are being sued in their individual capacities. (DSOAF ¶ 29).

Investigator Hemphill testified that he does not remember knowing that Plaintiff Hernandez had a pending lawsuit at the time of the investigation and he had no basis to think that Plaintiff Hernandez was being retaliated against for filing a lawsuit. (DSOAF ¶¶ 30-31). Although Defendant Dyner became aware of the fact that Hernandez had a pending lawsuit at the time he signed off on Investigator Hemphill's summary report, he did not know the specific allegations being made in *Hernandez I* and did not know there were claims of political retaliation. (DSOAF ¶ 32). When Gary Hickerson signed off on the Command Channel Review of Plaintiff Hernandez's OPR investigation, he did not know who Plaintiff Hernandez was. (DSOAF ¶ 33). Defendant Ways did not discuss the discipline he recommended for Plaintiff Hernandez with anyone. (DSOAF ¶ 34). Defendant Whittler did not believe that the recommendation of discipline was based on anything other than the sufficient evidence contained within the investigation. (DSOAF ¶ 35). Finally, neither Defendant Nolan nor Sheriff Dart was involved in Plaintiff Hernandez's OPR investigation. (DSOAF ¶¶ 36, 38).

**ARGUMENT**

**I.        Standard of Review**

Summary judgment is only proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When ruling upon a motion for summary judgment, the Court must construe all facts favorably to the non-moving party and make reasonable inferences in that party's favor. *Rebolar ex rel. Rebolar v. City of Chicago, Ill.*, 897 F.Supp.2d 723, 726 (N.D. Ill. 2012) (Gilbert, J.) (citing *Eaton v. Ind. Dep't of*

*Corr.*, 657 F.3d 551, 552 (7th Cir.2011)). The Court's role on summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir.2008). Summary judgment is not a tool that can be "used to resolve swearing contests between litigants." *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

## II. Collateral Estoppel Is Not Proper

Defendants should not be collaterally estopped from litigating the issue of whether they knew of Plaintiffs Michno and Hernandez's political affiliation. Collateral estoppel applies only if the following requirements are satisfied: (1) the party against whom it is being asserted was fully represented in the prior litigation; (2) the issue sought to be precluded must have been identical to the issue in the prior litigation; (3) the issue must have been litigated and decided on its merits in the prior litigation; and (4) the resolution of the issue must have been necessary to the court's judgment. *Little v. Tapscott*, No. 01 C 9738, 2002 U.S. Dist. LEXIS 13314, at *20 (N.D. Ill. July 19, 2002) (Guzman, J.). The Court has "a broad range of discretion in assessing the propriety of [Plaintiffs'] motion that seeks to use collateral estoppel offensively to preclude [Defendants] from relitigating an issue previously decided in another action." *Garza v. Henderson*, 779 F.2d 390, 393 (7th Cir. 1985). The Court's "sense of justice and equity" governs the application of collateral estoppel. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334 (1971).

### A.     The Individual Defendants Were Not Fully Represented in *Hernandez I*

Significantly, in Section 1983 actions, "a judgment will not be given collateral estoppel effect if the party against whom a previous court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Little*, 2002 U.S. Dist. LEXIS 13314, at *20-21 (citing *Haring v. Prosise,* 462 U.S. 306, 313 (1983)). *See also Gray v. Lacke*, 885 F.2d 399, 406 (7th Cir. 1989) (quoting *Allen v. McCurry*, 449 U.S. 90, 95 (1980)) (explaining that "courts will not apply collateral estoppel when the party against whom the prior decision is invoked did not have a 'full and fair opportunity to litigate' that issue in the prior case"). *See also generally Parker v. Four Seasons Hotels*, No. 12 CV 3207, 2012 U.S. Dist. LEXIS 97622, *3 (N.D. Ill. July 13, 2012) (Leinenweber, J.). Notably, litigants who never appeared in the prior action "may not be collaterally estopped without litigating the issue" because they "never had a chance to present their evidence and arguments on the claim." *Boyer v. BNSF Ry. Co.*, 824 F.3d 694, 703-04 (7th Cir. 2016) (citing *Blonder-Tongue Labs., Inc.*, 402 U.S. at 329). Due process prohibits estopping them despite the existence of an adjudication of identical issues that stand against their position. *Id.*

Here, Plaintiff cannot satisfy the first element of collateral estoppel—that the party against whom collateral estoppel is being asserted was fully represented in the prior litigation. Not one of the individual Defendants named in the current cases were named as Defendants in *Hernandez I*. (DSOAF ¶¶ 2, 10, 29). The individual Defendants were not represented in the prior litigation and none of them had the opportunity to fully litigate the issue of whether they had knowledge of Plaintiffs' political affiliation or perceived political affiliation. Collateral estoppel

8

thus cannot be applied here. *See United States v. Brocksmith*, 991 F.2d 1363, 1367 (7th Cir. 1993) (explaining that "collateral estoppel holds only between the same parties").

Significantly, because the individual Defendants are being sued in their individual capacities, Plaintiffs cannot argue that they were in privity with the Cook County Sheriff's Office in *Hernandez I*. (DSOAF ¶¶ 10, 29). There is a distinction between a government official being sued in their official capacity and a government official being sued in their individual capacity as an official capacity lawsuit is really a lawsuit against the government entity and an individual capacity lawsuit "seeks to impose personal liability upon a government official." *Sterling v. United States*, 85 F.3d 1225, 1229 (7th Cir. 1996). Accordingly, "[g]overnment employees (in their individual capacities) are not in privity with their government employer." *See generally Rathgeb v. Carlinville Bd. of Police Comm'rs*, No. 90-3180, 1993 U.S. Dist. LEXIS 18034, *14 (C.D. Ill. May 28, 1993). *See also generally Connor v. Reinhard*, 847 F.2d 384, 395 (7th Cir. 1988) (citing *Headley v. Bacon*, 828 F.2d 1272, 1279 (8th Cir. 1987) ("[C]ourts do not generally consider an official sued in his personal capacity as being in privity with the government."); *Roy v. City of Augusta, Me.*, 712 F.2d 1517, 1521-22 (1st Cir. 1983); *Kunzelman v. Thompson*, 799 F.2d 1172, 1178 (7th Cir. 1986)) (explaining that government employees sued in their individual capacities are not in privity with the government under *res judicata*). Preclusion is only justified as to litigation undertaken in an official capacity and, therefore, a judgment against a government does not bind its officials in subsequent litigation that asserts a personal liability against the officials." *Connor*, 847 F.2d at 395 (quoting C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 4458, at 508 (1981)) (internal quotations omitted).

As the individual Defendants, including Sheriff Dart to the extent he is being sued in his individual capacity, were not in privity with the Cook County Sheriff's Office, they must not be estopped from litigating the issue of whether or not they knew of Plaintiffs' political affiliations. As set forth above, the purpose of collateral estoppel is to prevent parties from relitigating an issue that has already been decided in another case. *Garza*, 779 F.2d at 393. However, since the individual Defendants were not involved in *Hernandez I* and were not fully represented in that matter, they would not be relitigating an issue that was already decided in that matter. Rather, they would be litigating the issue for the first time.

Additionally, the principles of equity and fairness require that Defendants and defense witnesses not be collaterally estopped from litigating this issue because genuine issues of material fact exist as to whether the individual Defendants knew of Plaintiffs' political affiliation and/or *Hernandez I*. The investigators assigned to Michno's OPR investigation, Shilling and Fitzgerald, testified that they were unaware of Michno's political affiliation or the *Hernandez I* lawsuit. (DSOAF ¶¶ 11-14). Similarly, with respect to Plaintiff Hernandez, Investigator Hemphill testified that he does not remember knowing that Plaintiff Hernandez had a pending lawsuit at the time of the investigation and Defendant Dyner, who learned of the existence of a lawsuit, did not know the specific allegations being raised in the lawsuit or that it involved claims of political retaliation. (DSOAF ¶¶ 30-32). Gary Hickerson also did not know who Hernandez was at the time he signed off on the investigation. (DSOAF ¶ 33). Defendant Ways testified that there was no indication that any consideration was given to politics during the OPR investigations. (DSOAF ¶¶ 17, 34). As Defendant Hickerson testified that he did not know who Michno was, he would not have known of Michno's political affiliation. Defendant Whittler

10

testified that she did not recall having any conversations with anyone regarding Michno or Hernandez and that she did not believe that the recommendation of discipline was based on anything other than the sufficient evidence contained within the investigations. (DSOAF ¶¶ 21-24, 35). Finally, Defendant Nolan had no involvement in Plaintiff Michno's investigation, and Sheriff Dart was not involved in either Plaintiff's OPR investigation. (DSOAF ¶¶ 36-38). In short, the individual Defendants must be afforded the opportunity to fully litigate the issue of whether they had knowledge of Plaintiffs' political affiliations or perceived political affiliations. Otherwise, a miscarriage of justice would ensue as they would be bound by the judgment of *Hernandez I*, a case in which they were not fully represented and in which they did not have any opportunity to litigate this issue. This Court should thus deny Plaintiffs' Motion for Partial Summary Judgment as to the individual Defendants.

### B. Collateral Estoppel Is Not Proper As to the Cook County Sheriff's Office or Sheriff Dart

Although the *Hernandez I* Court stated that the Cook County Sheriff's Office "believed Plaintiffs, like virtually all SORT officers, were politically affiliated with Remus," the Sheriff's Office and Sheriff Dart, to the extent he is being sued in his official capacity by Plaintiff Hernandez, should not be collaterally estopped from litigating this issue in the instant matter. The general limitation to application of collateral estoppel is that "[t]he party against whom the issue had been resolved must have had, first, a full and fair opportunity to litigate the issue in the previous suit and, second, *a meaningful opportunity to appeal the resolution of the issue*." *Deguelle v. Camilli*, 724 F.3d 933, 935 (7th Cir. 2013) (emphasis added).

As the final judgment was entered in favor of the Cook County Sheriff's Office in *Hernandez I*, there was no reasonable opportunity for the Sheriff's Office to appeal the court's

11

determination that it had knowledge of Plaintiffs' political affiliations and support for Richard Remus. Accordingly, the Sheriff's Office and Sheriff Dart, to the extent he is being sued in his official capacity,[1] should not be collaterally estopped from litigating the issue of whether they had knowledge of Plaintiffs' political affiliations.

WHEREFORE, Defendants, COOK COUNTY SHERIFF'S OFFICE, AND THOMAS J. DART, ROSEMARIE NOLAN, ZELDA WHITTLER, JOSEPH WAYS SR., GARY HICKERSON, EDWARD DYNER, AND COOK COUNTY, respectfully request that this Court deny Plaintiffs' Motion for Partial Summary Judgment and grant any other relief this Court deems just.

Respectfully Submitted,

By: /s/ Terrence F. Guolee
One of the attorneys for Defendants

Terrence F. Guolee - tguolee@querrey.com
Larry S. Kowalczyk - lkowalczyk@querrey.com
Megan K. Monaghan - mmonaghan@querrey.com
QUERREY & HARROW, LTD.
175 West Jackson, Suite 1600
Chicago, Illinois 60604
Phone: 312-540-7000 / Fax: 312-540-0578

---

[1] "Suing the Sheriff in his official capacity is the same as suing the Sheriff's Office, so suing both is generally considered redundant." *Bless v. Cook Cnty. Sheriff's Office*, 13 CV 4271, 2016 U.S. Dist. LEXIS 29961, *2 n. 1 (N.D. Ill. Mar. 8, 2016) (Lee, J.). *See also Second Amend. Arms v. City of Chi.*, No. 10 CV 4257, 2012 U.S. Dist. LEXIS 136645, *12-13 (N.D. Ill. Sept. 25, 2012) (Dow, J.) (dismissing the claims against the official-capacity defendants because it was redundant to sue them and the City).