UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GENE MICHNO, | ) | |
| | ) | |
| Plaintiff, | ) | Honorable Matthew F. Kennelly |
| | ) | |
| v. | ) | Case No. 13-cv-7163 |
| | ) | |
| | ) | Consolidated with Case No. 13 C 716 |
| SHERIFF THOMAS DART, COOK COUNTY | ) | |
| SHERIFF'S OFFICE, ROSEMARIE NOLAN, | ) | |
| ZELDA WHITTLER, JOSEPH WAYS, SR., | ) | |
| GARY HICKERSON, AND COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| IVAN HERNANDEZ, | | |
| | ) | |
| Plaintiff, | ) | Honorable Matthew F. Kennelly |
| | ) | |
| v. | ) | Case No. 13-cv-07949 |
| | ) | |
| COOK COUNTY SHERIFF'S OFFICE, | ) | Consolidated with Case Number |
| THOMAS J. DART, in his individual capacity | ) | No. 13 C 716 |
| as Sheriff of Cook County, Illinois | ) | |
| ROSEMARIE NOLAN, ZELDA WHITTLER, | ) | |
| JOSEPH WAYS, SR., EDWARD M. DYNER, | ) | |
| in their individual capacities, and COOK | ) | |
| COUNTY, a local unit of government, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ADDITIONAL STATEMENT OF FACTS
IN SUPPORT OF PLAINTIFFS' RESPONSE TO DEFENDANTS'
<u>MEMORANDUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT</u>**

Plaintiffs, GENE MICHNO and IVAN HERNANDEZ, through their undersigned counsel, respectfully submits their 56.1(b) statement of additional facts.

1

1. In *Hernandez I*, the plaintiffs brought claims of retaliation against the Sheriff's Office arising out the defendants' acts of de-deputizing, demoting, reassigning, and removing the plaintiffs from the SORT Unit. (Ex. 1, *Hernandez I*, Dkt. 55, Plaintiffs' First Amended Complaint.)

2. In *Hernandez I*, there was direct evidence that members of management of the Sheriff's Office made retaliating comments against the plaintiffs and retaliated against them. (Ex. 2, *Hernandez I*, Dkt. 178, Plaintiffs' Additional Statement of Facts, ¶¶ 3-7, 29-30, 57.)

3. In *Hernandez I*, discovery was closed on June 9, 2008. (Ex. 3, *Hernandez I*, Dkt. 110, 5/9/08 Court Order.)

4. In *Hernandez I*, on July 14, 2015, Judge Durkin denied Plaintiffs motion for leave to file a second amended complaint. (Ex. 4, *Hernandez I*, Dkt. 516, 7/14/15 Court Order.)

5. The *Hernandez I* plaintiffs alleged that defendants retaliated against the plaintiffs because of their political affiliation, their involvement in the 2006 inmate breakout, and because they made various complaints and reports about safety concerns, the lack of proper staffing and management supervision. (Ex. 1, *Hernandez I*, Dkt. 55, Plaintiffs' First Amended Complaint, ¶¶ 115, 125-26, 144.)

6. Plaintiffs Michno and Hernandez alleged that Defendants retaliated against them by subjecting Plaintiffs to false allegations, falsely charging and subjecting them to an administrative investigation, de-deputizing them, suspending them with pay, transferring them to other assignments and divisions, and subjecting them to unwarranted and disproportionate disciplinary action, and in the case of Plaintiff Michno, terminating his employment. (Hernandez Dkt. 1, Complaint ¶ 33-35, 48, 61; Michno Dkt. 56, First Am. Comp, ¶ 30-31, 52.)

7. After learning of Sergeant Hernandez's involvement in the construction project that was the subject of the OPR investigation, Investigator Hemphill contacted Sergeant Hernandez and ordered him to appear at OPR for an interview as a witness. Investigator Hemphill advised Sergeant Hernandez that he was not entitled to be represented by legal counsel. (Ex. 5, Hernandez Dep. Tr. 87:21-88:7.)

8. On November 08, 2011, Sergeant Hernandez appeared at OPR as ordered. Sergeant Hernandez told Investigator Hemphill he would be happy to answer questions but he wanted his attorney present and he was again advised he was not entitled to representation. Hemphill has testified that he did not order Sergeant Hernandez to answer questions, even though he had the ability to do so. After appearing and advising he wanted to be represented and without being ordered to answer questions or remain to be asked questions, Hernandez left OPR. No subsequent attempt was made to interview Hernandez. (Ex. 5, Hernandez Dep. Tr. 53:17-24, 54:22-55:3, 87:21:88-7.)

9. Sergeant Hernandez was subsequently charged with failing to cooperate with an OPR Internal Affairs Investigation and it was recommended that he be separated from the Cook County Sheriff's Office. (Defs' Ex. S, Hernandez v. CCSO_000049.)

10. On June 17, 2009, Rosemarie Nolan (Director of Personnel) filed a Complaint Register alleging that Correctional Officer Gene Michno, who was on a medical leave of absence, had not reported to the Cook County Medical Unit as ordered. (Defs' Ex. L, Michno v. CCSO_000179-80.)

11. Investigation of the complaint was initially assigned to Investigator David Shilling and subsequently re-assigned to Investigator Patrick Fitzgerald. No interviews were conducted with Rosemarie Nolan (Director of Personnel), the complainant or personnel at the Medical Unit or

the Personnel Office. Correctional Officer Michno was not interviewed, nor did Investigator Fitzgerald attempt to obtain other documentation such as rosters. (*See generally* Defs' Ex. L; *see also* Ex. 6, Michno Dep. Tr. 77:16-23; Ex. 7, Fitzgerald Dep. Tr. 117:12-14.)

12. Correctional Officer Michno was subsequently charged with Major Acts of Insubordination – Failure to Renew or Return from Leave of Absence as a result of the OPR Investigation and it was recommended that he be separated from the Cook County Sheriff's Office. (Defs' Ex. L, Michno v. CCSO_000162.)

13. Both Michno and his Attorney, Dana Kurtz, had supplied documentation to the Medical Unit and Personnel unit that was never obtained during the investigation. The documentation explained reasons and delays in Michno obtaining the requested medical documentation and that he had in fact, subsequently provided it. (Ex. 6, Michno Dep. Tr. 56:19-58:2; Ex. 8, Nolan Dep. Tr.87:1-88:3.)

14. Defendants Ways was designated with final policymaking authority. (Ex. 9, Ways Dep. Tr. 123:22-124:4.)

15. Defendant Dyner was delegated with final policymaking authority. (Ex. 9, Ways Dep. Tr. 124:5-18.)

16. Defendant Whittler had final policymaking authority. (Ex. 10, Whittler Dep. Tr. 15:9-25; 113:5-14.)

17. Defendant Nolan had final decision making authority in regards to whether employees were on an authorized leave of absence or not. (Ex. 11, Little Dep. Tr. 12:20-13:25.)

18. Hemphill had knowledge of Hernandez's political affiliation or prior lawsuit. (Ex. 12, Hemphill Dep. Tr. 100:21-25; 165:10-20.)

19. Hernandez stated that he would be happy to answer any questions OPR had of him as long as his attorney was present. (Ex. 5, Hernandez Dep. Tr. 54:22-55:3.)

20. Hernandez appeared for his OPR interview. (Ex. 5, Hernandez Dep. Tr. 53:17-24.)

21. Hernandez was not ordered to answer any questions at his OPR interview. (Ex. 5, Hernandez Dep. Tr. 88:4-7.)

22. An officer had to the right to an attorney being present when being questioned by OPR. (Ex. 7, Fitzgerald Dep. Tr. 24:9-13, 84:15-23; Ex. 13, Hickerson Dep. Tr. 89:23-90:14.)

23. Dyner was aware that Plaintiff Hernandez had a lawsuit pending against the Sheriff's Department prior to signing off on the OPR summary report sustaining the allegations against Plaintiff Hernandez. (Ex. 14, Dyner Dep. Tr. 56:3-8.)

24. Hickerson was aware that Plaintiff Hernandez had filed a lawsuit against the Sheriff's Office prior to signing off on the Command Channel Review. (Ex. 13, Hickerson Dep. Tr. 132:1-12.)

25. Ways was aware that Plaintiff Hernandez had a lawsuit against the Sheriff's Office prior to making a recommendation of termination. (Ex. 9, Ways Dep. Tr. 71:6-10.)

26. Whittler was aware of the *Burruss* lawsuit against the Sheriff's Office and that it involved 22 SORT officers. (Ex. 10, Whittler Dep. Tr. 48:22-49:1.)

27. Whittler became aware that Hernandez had filed a lawsuit against the Sheriff's Office when she reviewed the OPR file and prior to signing off on the Command Channel Review. (Ex. 10, Whittler Dep. Tr. 69:18-70:7.)

28. Nolan was aware that Michno had filed a lawsuit against the Sheriff's Office prior to being transferred to the Merit Board. (Ex. 8, Nolan Dep. Tr. 46:25-47:2; 47:10-13.)

29. Nolan was also aware that Hernandez had filed a lawsuit against the Sheriff's Office prior to being transferred to the Merit Board. (Ex. 8, Nolan Dep. Tr. 47:14-17.)

30. Investigator Fitzgerald was aware that members of the SORT team had previously filed a lawsuit against the Sheriff's Office for political retaliation. (Ex. 7, Fitzgerald Dep. Tr. 182:6-9.)

31. Investigator Hemphill recommended that Hernandez be held in abeyance should be return to the Cook County Sheriff's Office. (Ex. 9, Ways Dep. Tr. 243:5-21.)

32. OPR investigators researched employees' political affiliation on OPR cases. (Ex. 9, Ways Dep. Tr. 166:5-25.)

33. Assistant Director Dyner had a call with Sheriff Dart and Undersheriff Whittler stating that they wanted another employee fired before the investigation was even complete. (Ex. 12, Hemphill Dep. Tr. 37:3-13, 47:10-19.)

34. Hemphill did not believe Hernandez should have been terminated or that charges were warranted against him. (Ex. 12, Hemphill Dep. Tr. 30:12-21.)

35. Defendants have used OPR investigations to retaliate against employees and to terminate those who have complained about discrimination and/or retaliation. (Ex. 12, Hemphill Dep. Tr. 30:23-38:13.)

36. Investigator Fitzgerald's did not interview Plaintiff Michno or any other witnesses during the OPR investigation. (Ex. 6, Michno Dep. Tr. 77:16-23; Ex. 7, Fitzgerald Dep. Tr. 117:12-14; 153:5-10.)

37. Michno went to the Cook County Medical Unit on June 9, 2009 to deliver a doctor's note. (Ex. 6, Michno Dep. Tr. 56:19-57:14.)

38. Michno's attorney, Dana Kurtz, sent a letter to Nolan in 2009 stating that Michno appeared at CCSO and provided a doctor's note, and further attached the doctor's note that

Michno delivered so there was a record of what was delivered. Despite having delivered the doctor's note and subsequently sending a letter with the doctor's note attached, it was not included in the OPR file. (Ex. 6, Michno Dep. Tr. 56:19-57:14; Ex. 7, Fitzgerald Dep. Tr. 209:2-9.)

39. Sharon Little and Rosemarie Nolan admitted that being in an "applied" status for duty related disability would constitute "authorized leave." (Ex. 11, Little Dep. Tr. 26:19-27:3; Ex. 8, Nolan Dep. Tr. 119:8-120:17.)

40. Nolan should have advised Sharon Little that Michno had applied for duty related disability and that his application was still pending with the Pension Board. (Ex. 11, Little Dep. Tr. 77:17-22.)

41. There are rosters from 2009 and 2010 showing that Michno was in authorized leave status ("LOA"). (Ex. 11, Little Dep. Tr. 79:7-11; Plaintiff Dep. Ex. 17.)

42. Defendant Nolan would attend closed door executive meetings of the Merit Board where specific employees' cases were discussed including Michno and Hernandez. (Ex. 8, Nolan Dep. Tr. 15:7-28:7.)

43. In regards to Plaintiffs' Whistleblower Act claims, Plaintiffs alleged: "Plaintiff was retaliated against in violation of rights guaranteed to him by the Illinois Whistleblower Act, 740 ILCS § 174/15, and he has suffered substantial losses as a result, including, but not limited to, lost wages and benefits, mental and emotional anguish and embarrassment and humiliation." (Hernandez Dkt. 1, Complaint ¶ 69; Michno Dkt. 56, First Am. Comp, ¶ 71.)

Respectfully Submitted,

GENE MICHNO and IVAN HERNANDEZ

*s/Jacob D. Exline*
_____
Attorney for Plaintiffs

*Filed electronically on October 16, 2018*

Dana L. Kurtz, Esq. (ARDC # 6256245)
Jacob D. Exline, Esq. (ARDC # 6326874)
KURTZ LAW OFFICES, LTD
32 Blaine Street
Hinsdale, Illinois 60521
Phone: 630.323.9444
Facsimile: 630.604.9444
E-mail: dkurtz@kurtzlaw.us
E-mail: jexline@kurtzlaw.us